UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ronald Joseph Hinman,

             Petitioner,               Case Number: 22-10461
                                       Honorable F. Kay Behm

v.

Jeffrey Howard,[1]

             Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Ronald Joseph Hinman, currently in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), and two counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a).  For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability, and grants Petitioner leave to proceed on appeal *in forma pauperis*.

---

[1] The proper respondent in a habeas case is the warden of the facility where the petitioner is incarcerated. See Rule 2(a), Rules Governing § 2254 Cases.  Thus, the Court substitutes the warden of the prison where Petitioner is incarcerated, Jeffrey Howard, as the respondent.

## I.  Background

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC) for the assault of 12-year-old AJ, and two counts of third-degree CSC for the assault of 13-year-old AC.  On February 11, 2019, he was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to 25 to 50 years for each conviction, with the sentences for first-degree CSC to be served concurrently with each other but consecutively to the sentences for third-degree CSC.

Petitioner filed an appeal by right in the Michigan Court of Appeals.  The Michigan Court of Appeals set forth the following relevant facts:

> Defendant's CSC-I convictions arise from two acts of digital penetration against 12-year-old AJ on July 10, 2016.  The offenses allegedly occurred at AJ's home when defendant, whom AJ considered to be an uncle, visited her home for a family party. According to AJ, while playing in a pool, defendant touched her underneath her bathing suit and digitally penetrated her vagina, and he again digitally penetrated her in her bedroom after she went inside her house to change her clothing.  Defendant's CSC-III convictions arise from a sexual assault against 13-year-old AC in 2008. According to AC, while she was staying at the home of defendant's mother, defendant sexually assaulted her while she was sleeping on a couch by penetrating her vagina with his finger and with his penis.
>
> Defendant denied any inappropriate sexual touching of AJ, but admitted that he may have accidently touched her in the pool while wrestling with a group of other children in the pool. Defendant also denied any sexual activity with AC and claimed that he could not have done so because he was in jail at the time that incident was alleged to have occurred.

*People v. Hinman*, No. 347204, 2020 WL 6375199, at *1 (Mich. Ct. App. Oct. 29, 2020). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

The Michigan Court of Appeals affirmed Petitioner's convictions but held the trial court erred by ordering the two first-degree CSC sentences to be served concurrently which each other, but consecutively to the two third-degree CSC sentences. *Hinman*, 2020 WL 6375199 at *8-10. The court of appeals remanded for correction of Petitioner's "judgment of sentence to specify that the CSC-I sentences are to be served consecutively to each other, but concurrently with the CSC-III sentences." *Id.* at *14.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The application was denied because the court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Hinman*, 508 Mich. 952 (Mich. Oct. 8, 2021).

Petitioner then filed this petition for a writ of habeas corpus. He raises these claims:

I.     The complainant's statement made to SANE nurse Amy Mawhorter was not a statement made for medical treatment or diagnosis and, therefore, was inadmissible hearsay, thereby, denying him of his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

II.    The statements made by the complainant's mother to the SANE nurse were inadmissible hearsay not subject to any hearsay

3

exception, thereby, denying him of his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

III.  The statements AJ made to her mother, TH, after LA told TH she needed to talk to AJ immediately, were not excited utterances, but were inadmissible hearsay, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

IV.  It was reversible error for the prosecutor to seek and receive opinion testimony by a juror in this case about a witness' failure to immediately report a sexual assault and then represent the juror's opinion as true to the other jurors, thereby, denying him of his Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

V.  The trial court clearly erred by allowing the prosecutor to elicit "human lie detector" testimony that AJ was telling the truth, thereby, denying him of his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

VI.  Prosecutorial misconduct denied Petitioner Hinman a fair trial where the prosecutor shifted the burden of proof during closing arguments, thereby, denying him of his rights under the Fourteenth Amendment right of the United States Constitution.

VII.  The cumulative effect on multiple errors in this case undermine the confidence in the reliability of the verdict, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

VIII.  The trial court erred by improperly ordering the sentences in Petitioner Hinman's two cases to run consecutively to each other without statutory authority, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

IX.    The prosecutor committed reversible error by continuously changing the date of the alleged offense, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

X.     It was reversible error for the prosecutor to refer to the inadmissible evidence during closing arguments to bolster the credibility of the complainant, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

XI.    It was reversible error for the prosecutor to ask a potential juror questions that fall outside of the intended function of voir dire in an attempt to taint the jury pool, thereby, denying him of his rights under the Sixth and Fourteenth Amendments of the United States Constitution.

XII.   The trial court clearly erred by allowing "SANE" Amy Mawhorter to give opinion testimony on the accuracy and/or efficiency of DNA collection techniques, thereby, denying him of his rights under the Fourteenth Amendment of the United States Constitution.

XIII.  It was reversible error for the prosecutor to falsely state to the jury that "SANE" Amy Mawhorter found injuries consistent with digital penetration, thereby, denying him of his rights under the Sixth and Fourteenth Amendments of the United States Constitution.

XIV.   The prosecutor engaged in gross misconduct by making an argumentative opening statement that was excessively inflammatory, thereby, denying him of his Fourteenth Amendment of the United States Constitution.

(ECF No. 1, PageID.8-9) (edited for clarity and to protect the identity of minor victims).

Respondent has filed an answer in opposition arguing that Petitioner has procedurally defaulted eight of his claims and that all claims are meritless. The Court is not required to address a procedural default issue before deciding against the petitioner on the merits. *Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

## II.  Legal Standard

A Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 139 S. Ct 504, 506 (2019). A federal court may grant habeas corpus relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication. 28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  To obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011)

For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

### A.  Evidentiary Claims

Petitioner first, second, third, fifth, and twelfth claims allege errors in the admission of evidence.  Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely

unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003).  The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991).  To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).  This standard allows state courts "wide latitude ... with regard to evidentiary matters under the Due Process Clause." *Id.*

## 1.

Petitioner's first and second claims concern the testimony of Amy Mawhorter.  Mawhorter, a sexual assault nurse examiner (SANE), examined AJ at Hurley Medical Center.  She also completed a rape kit.  Mawhorter testified about statements made to her by AJ and AJ's mother during the examination.  Petitioner maintains that admission of these hearsay statements was improper and violated his right of confrontation.

The Michigan Court of Appeals ruled that Mawhorter's testimony about AJ's and her mother's statements was admissible under the state rules of evidence as statements made for the purpose of medical diagnosis or treatment.  *Hinman*,

2020 WL 6375199 at *2-3.  The Court may only grant relief if Petitioner shows

that the state court's evidentiary ruling was "in conflict with a decision reached by

the Supreme Court on a question of law or if the state court decided the evidentiary

issue differently than the Supreme Court did on a set of materially

indistinguishable facts." *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000)

(cleaned up). Petitioner does not meet this standard.  The Supreme Court has never

held that the introduction of hearsay testimony violates the Due Process Clause.

*Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013).  Therefore, no reasonable

jurist could debate the state court's denial of this claim.

      The Michigan Court of Appeals also held that admission of this testimony

did not violate the Confrontation Clause.  Out-of-court statements that are

testimonial in nature are barred by the Sixth Amendment Confrontation Clause

unless the witness is unavailable and the defendant has had a prior opportunity for

cross-examination, regardless of whether such statements are deemed reliable by

the court. *See Crawford v. Washington*, 541 U.S. 36 (2004).  Here, Mawhorter,

AJ, and AJ's mother testified at trial.  "[W]hen the declarant appears for cross-

examination at trial, the Confrontation Clause places no constraints at all on the

use of [her] prior testimonial statements." *Id.* at 59 n.9.  Therefore, admission of

this testimony did not violate the Confrontation Clause.

**2.**

In his third claim, Petitioner argues that the trial court erred in allowing AJ's mother TH to testify about what AJ told her the night of the charged offenses.  TH testified that her mother (AJ's grandmother) contacted her in the middle of the night and told her she needed to talk to AJ immediately.  AJ told her mother that, hours previously, Petitioner had twice "put his finger in her" and told her "it's okay because I'm your uncle."  (ECF No. 7-8, PageID.514.)  Petitioner maintains that these statements were not properly admitted under the excited utterance exception to the hearsay rule because her statements were not made immediately after the assault so AJ "had time to contrive" facts.  (ECF No. 1, PageID.24.)

This claim presents a state evidentiary law issue not cognizable on habeas review.  *Smith v. Jones*, 326 Fed. Appx. 324, 330 (6th Cir. 2009).  Admission of this testimony also did not violate the Confrontation Clause or Petitioner's right to a fair trial where AJ and her mother testified at trial.

**3.**

Petitioner's fifth claim concerns testimony from AJ's grandmother on re-direct about whether AJ's allegations against Petitioner were motivated by her desire for her grandmother's attention.  The following exchange occurred:

Q:  Do you think [AJ] did this to get attention?

10

A:  No.

Q:  Did you give her any more or less attention based on this?

A:  No.

Q:  Do you feel that – when we had talked earlier, we talked about you weren't so sure about you weren't so sure about particular words she had said, but you were sure about what overall happened?

A:  Right.

(ECF No. 7-8, PageID.501.)

The Michigan Court of Appeals denied relief on this claim:

As defendant correctly observes, it is generally improper for a witness to comment or provide an opinion on the credibility of another witness because credibility matters are to be decided by the jury... In this case, the grandmother was not asked to offer a blanket opinion regarding whether she believed AJ's allegations were credible. Rather, she was asked whether she believed AJ made the allegations in an effort to get the grandmother's attention, a subject that defense counsel had explored on cross-examination. Not only was the grandmother's testimony responsive to defense counsel's cross-examination, her opinion was relevant because only the grandmother was in a position to testify regarding how much attention AJ typically sought from the grandmother, and whether the grandmother gave AJ more or less attention than usual because of AJ's allegations.  These were proper subjects to explore in light of defense counsel's cross-examination, which suggested that AJ may have made the allegations to her grandmother as a way of gaining her grandmother's attention. Considering the responsive nature of the testimony, defendant has not shown that it qualifies as plain error.

Defendant also has not shown that the grandmother's inability to recall AJ's exact words when describing the alleged sexual abuse by defendant rendered her testimony improper.  The grandmother testified that she recalled the substance of what AJ said to her.  The grandmother was not offering an "opinion" of the conversation.

11

> Further, the grandmother's testimony explaining the substance of
> what AJ revealed did not involve any commentary on whether she
> believed AJ's allegations were credible.  Again therefore, defendant
> has not shown that this testimony constituted plain error.

*Hinman*, 2020 WL 6375199, at *6.

The Michigan Court of Appeals' decision is neither contrary to Supreme

Court precedent nor an unreasonable application of federal law or the facts. The

prosecutor's questions did not ask the grandmother to give an opinion on AJ's

truthfulness.  Instead, the questions were a fair response to the defense's

exploration on cross-examination of AJ's possible motives for lying.  Petitioner

was not denied a fair trial by admission of this testimony.

### 4.

Lastly, Petitioner claims that nurse Amy Mawhorter was impermissibly

allowed to give expert testimony on the accuracy and/or efficiency of DNA

collection techniques.  Mawhorter testified that, during her examination of AJ, she

swabbed different areas to collect DNA samples for testing.  Petitioner challenges

the following exchange on redirect by the prosecutor:

> Q. The swabs that you talked about were the only ones that were
> indicated in this case?
>
> A. Correct.
>
> Q. Okay, and if there was something else indicated, you would have
> taken that swab too?
>
> A. Correct.

Q. And based on your education and experience, is it—if you can answer and, if you can't, that's all right, but is it—are there things that are harder to get DNA from than other things?

[Defense Counsel]: Judge, I'm going to have to object to that. That's a question for an expert.

[The Prosecutor]: I can qualify her as an expert if you want to.

[Defense Counsel]: Not in DNA, you can't.

[The Prosecutor]: Based on her education and experience, does she know from her training as a SANE nurse if there are better percentage [sic]. That's all I'm asking, based on her training and experience.

THE COURT: I'll overrule the objection.

[The Prosecutor]: Okay. Thank you.

Q. So, you can answer the question. I'll give it to you again.  This—the indication in this case was that it was a digital penetration.

A. Yes.

Q. Based on your education and training and nothing else, is that a high percentage shot to find some DNA or not?

A. I don't know the exact percentage, what it would be.  I know that we have had problems and difficulties getting DNA collected from patients that we've worked with.

Q. With the digital penetration?

A. With any penetration.

Q. Okay, so it's not like a magic bullet.  You don't always get it.

A. No.

Q. Okay, and the answer was no. You shook your head, but—

A. No. Sorry.

*Hinman*, 2020 WL 6375199, at *13-14.

The Michigan Court of Appeals held that this testimony was proper under state rules of evidence. While Mawhorter "was not qualified to testify as an expert in the area of DNA testing or analysis, her testimony did not cover those subjects, but instead concerned her collection of DNA samples and her knowledge of the likelihood of recovering DNA through swabbing." *Hinman*, 2020 WL 6375199 at *14. Mawhorter had experience and training in collecting samples for DNA testing. *Id.* Her testimony about the difficulty of collecting DNA samples fell within her experience as a SANE nurse. Petitioner fails to advance any argument as to how the admission of this testimony violated fundamental fairness or due process. This claim is denied.

### B.  Claims of Prosecutorial Misconduct

Petitioner raises several claims that the prosecutor engaged in misconduct. Specifically, he claims the prosecutor: (1) tainted the jury pool by asking improper questions; (2) improperly shifted the burden of proof during closing arguments, (3) changed the dates of the alleged offenses, (4) referred to facts not in evidence during closing arguments, and (5) gave an argumentative opening statement that was excessively inflammatory.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

**1.**

Petitioner contends that the prosecutor's questions to Juror 13 during voir dire tainted the juror pool.  Juror 13 (who was ultimately excused by the court) expressed concern about her ability to be impartial given that she worked with victims of sexual assault and abuse including children.  The prosecutor questioned her as follows:

> Prosecutor:  ... Given that you have the background in this, would you have an issue or would you feel like someone would be less believable because they didn't report right away?
>
> Juror 13:  No.
>
> Prosecutor:  Okay. Why do you say that?
>
> Juror 13:  Because it's a hard thing to report.
>
> Prosecutor: Okay.
>
> Juror 13: It's very personal.  It's very difficult to talk about.  It's very common that people don't report.
>
> Prosecutor: Can everybody – does everybody feel that might be true?  It's kind of a tough thing to talk about, tough thing to report?

(ECF No. 7-7, PageID.338.)

Petitioner contends that Juror 13's responses essentially allowed the prosecutor to solicit expert opinion testimony about delays in reporting sexual abuse without having to satisfy the requirements of Michigan Rule of Evidence 702.  The Michigan Court of Appeals found no error because the challenged line of

questioning was a response to the potential juror's expressed concerns about her ability to be fair and impartial.[2]  *Hinman*, 2020 WL 6375199 at *6.  The court of appeals concluded that the prosecutor's questions, including the questions about delayed reporting, were within the proper scope of voir dire.  *Id.*

Petitioner fails to show that the state court's denial of this claim was contrary to or an unreasonable application of *Darden*.  It is clear from the context of the exchange that the prosecutor questioned Juror 13 to determine whether she could be impartial during trial and render a fair verdict.  Juror 13 was excused from service and Petitioner fails to explain how her limited remarks during voir dire "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden* 477 U.S. at 181 (quotation omitted).

## 2.

Petitioner next argues that the prosecutor improperly shifted the burden of proof during closing argument with the following argument:

> [The Prosecutor]: I want to talk very briefly about the testimony of the defendant.  You heard in the beginning of course, we know that the defendant does not have to do anything.  The defense doesn't have to do anything.  They have no burden at all. Nothing, and you remember the defense attorney talking about he could clip his nails and that would be fine.  He can.  He could do that if he wanted.

---

[2] The Michigan Court of Appeals repeatedly identifies Juror 121 as the juror who was questioned regarding her work with victims of sexual assault.  *Hinman*, 2020 WL 6375199 at *5-6.  The trial transcript shows that the correct juror is Juror 13.  (ECF No. 7-7, PageID.336.)  Although the state court cited the wrong juror number, the state court's analysis clearly establishes that the court reviewed and considered the relevant portion of jury voir dire.

But when they choose to put on a case, it is fair to say they put on
their best case.  What they had was this.  They had Ron and nothing
more, and Ron again doesn't have a burden ...

[Defense Counsel]: Judge, I'm objecting because she is shifting the
burden here.

[The Prosecutor]: I am not shifting the burden.  I have very clearly
stated that I don't have to—I have the whole burden, but I am allowed
to comment on the evidence as it came in.

THE COURT: Overruled.

[The Prosecutor]: Thank you, Your Honor.

This is what they put forward and I agree, as he just said, that doesn't
shift the burden.  The burden is all mine, but Mr. Hinman felt that he
needed to take the stand and tell his side of it and his side of it made
no sense whatsoever.

*Hinman*, 2020 WL 6375199, at *7.

The Michigan Court of Appeals denied this claim holding that the

prosecutor's argument questioned the strength of the defense theory but did not

shift the burden of proof.  The court of appeals explained:

It is well-established that a prosecutor may not imply in closing
argument that the defendant must prove something or present a
reasonable explanation for damaging evidence because such argument
tends to shift the burden of proof. *People v. Fyda*, 288 Mich. App.
446, 463-464; 793 N.W.2d 712 (2010).  However, once a defendant
testifies, it is not improper for the prosecutor to comment on the
weaknesses of the defense's case or theory. ...

***

In this case, the prosecutor was commenting on the strength of the
defense's evidence, pointing out that it consisted entirely of

18

defendant's own testimony, and the prosecutor thereafter discussed various problems or weaknesses with that testimony.  The prosecutor repeatedly qualified her remarks by reminding the jury that defendant did not have any burden of proof and that the burden was on the prosecution to prove defendant's guilt. Viewed in context, the prosecutor's comments did not shift the burden of proof.

*Hinman*, 2020 WL 6375199, at *8.

The prosecutor's comments on the lack of support for the defense did not shift the burden of proof to the defendant.  *See Traylor v. Price*, 239 F. App'x 235, 239 (6th Cir. 2007). ("[W]here a defendant testifies at trial and advances an alternative theory of the case that would exonerate him from the crime, prosecutorial comments on the validity of the theory do not shift the burden of proof to the defendant.").  In the context of the prosecutor's entire argument and considering the jury instructions which clearly set forth the burden of proof, the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of *Darden*.

## 3.

Next, Petitioner argues that he was denied his right to sufficient notice of the charges against him because the prosecutor improperly amended the information to change the date of the offenses involving AC from September 2008 to 2008 generally.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the

19

nature and cause of the accusation."  U.S. Const., Amend. VI.  The Sixth Circuit

has explained this right, as applied to the States through the Fourteenth

Amendment, as follows:

> The due process clause of the Fourteenth Amendment mandates that
> whatever charging method the state employs must give the criminal
> defendant fair notice of the charges against him to permit adequate
> preparation of his defense.  *In re Ruffalo*, 390 U.S. 544 (1968); *Blake
> v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d
> 330, 338 (6th Cir. 1977).  This requires that the offense be described
> with some precision and certainty so as to apprise the accused of the
> crime with which he stands charged.  Such definiteness and certainty
> are required as will enable a presumptively innocent man to prepare
> for trial.  *Combs v. Tennessee*, 530 F.2d [695, 698 (6th Cir. 1976)].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

Where a defendant was provided adequate information of the charged

offense to enable him to defend himself, "any other deficiencies in the indictment

alleged by petitioner are solely matters of state law and so not cognizable in a

federal habeas proceeding."  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986).

In other words, if "sufficient notice of the charges is given in some ... manner" so

that the accused may adequately prepare a defense, the Fourteenth Amendment's

Due Process Clause is satisfied.  *Koontz*, 731 F.2d at 369.

The Michigan Court of appeals held that Petitioner received adequate notice

of the charges:

> In this case, defendant was similarly charged with sexual assault and
> the date of the alleged assaults was not an element of the offenses.
> Because of the passage of time—approximately 10 years by the time

of trial—AC was unable to specify a specific date of the offenses. The prosecution was able to narrow the time period to sometime in 2008, and argued that the offenses likely were committed after defendant's release from jail in November 2008. Defendant never moved for a specific time period in order to meet the charges nor argued that he was unable to respond to the charges without further information regarding the date of the alleged offenses. Considering these factors, defendant has not established that it was plain error to amend the information to specify generally that the offenses involving AC were committed in 2008. Any inconsistencies regarding dates in the testimony at trial affected only the weight of the testimony. Therefore, defendant is not entitled to relief with respect to this unpreserved issue.

*Hinman*, 2020 WL 6375199, at *11.

The Michigan Court of Appeals' decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  The Sixth Circuit has held that "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005).  The court noted that "prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved." *Id.*  The Sixth Circuit has several times rejected claims similar to Petitioner's because there is no clearly established Supreme Court precedent requiring that an information or indictment in a criminal sexual assault case involving minors must specify the date and time of the alleged assault in order to satisfy due process. *See Coles v. Smith*,

577 F. App'x 502, 510 (6th Cir. 2014) (holding that the state court reasonably

concluded that the charging document, which alleged assaults that took place on

unspecified dates over a three-and-a-half-year period, provided petitioner sufficient

notice of the charges); *Bruce v. Welch*, 572 F. App'x 325, 330-31 (6th Cir. 2014)

(holding that state court reasonably concluded that the charging document, which

alleged assaults that took place on unspecified dates over a four-year period,

provided sufficient notice of the charges).

Petitioner fails to identify any controlling Supreme Court precedent which

would show that a charging document alleging criminal sexual conduct occurred

on an unspecified date over a 12-month period fails to provide sufficient notice.

Therefore, Petitioner has failed to establish that the state court's rejection of his

claim that the notice provided by the information was constitutionally insufficient

is contrary to or an unreasonable application of clearly established federal law.

## 4.

Petitioner next argues that the prosecutor's closing statement misrepresented

facts and referenced facts not in evidence.

First, Petitioner claims that the prosecutor improperly commented on AJ's

forensic interview during closing argument.  Evidence was introduced at trial that

AJ participated in a forensic interview, but the contents of the interview were not

introduced.  Nevertheless, the prosecutor made the following argument: "[AJ] told

grandma, told mom, told an officer, told a SANE nurse and then ultimately came

here and told twice, once at a prelim and once here, and the Weiss interview in

between, the forensic interview, which we can't share with you, but that girl all

those times said the same thing." (ECF No. 7-9, PageID.768-69.)  The Michigan

Court of Appeals held that the prosecutor's statement was not improper because

the prosecutor specifically told the jury that AJ's statements during that interview

could not be shared.  *Hinman*, 2020 WL 6375199, at *12.  The court of appeals

also held:

> To the extent that the prosecutor's comments could have been
> interpreted as implying that AJ's statements during the forensic
> interview were also consistent with her other statements, an
> appropriate instruction on timely objection could have cured any
> perceived prejudice. ... Indeed, even without an objection, the trial
> court instructed the jury that it was only to consider the properly
> admitted evidence, and that the attorney's statements are not evidence.
> These instructions, together with the prosecutor's statement informing
> the jury that the contents of AJ's forensic interview could not be
> shared, should have been sufficient to protect defendant's substantial
> rights. Therefore, defendant is not entitled to appellate relief with
> respect to this issue.

*Hinman*, 2020 WL 6375199, at *11.

Jurors are presumed to follow their instructions.  *United States v. Olano*, 507

U.S. 725, 740 (1993).  Given this presumption and the brief and isolated nature of

the prosecutor's statement, the Michigan Court of Appeals decision was not an

unreasonable application *Darden*.

23

Petitioner also objects to the following argument advanced by the

prosecutor:

> And when she tells, she is still hysterical, she is still crying, and she's
> telling what happened to her grandma, and then she's telling the same
> thing to her mother.  Then she's telling that to an officer and a SANE
> nurse, and when she gets to that SANE nurse, what does the nurse
> find that's important?  She's got redness under her clitoral hood and
> there's no explanation for that other than somebody was touching her
> there.  There's an injury that can be seen by the SANE nurse, and she
> sees it, and she notes it, and it's consistent with what this girl said
> happened to her.

(ECF No. 7-9, PageID.770-71.)

The Michigan Court of Appeals held that the prosecutor's argument was a

reasonable inference drawn from Mawhorter's testimony that redness on the

victim's clitoral hood was evidence of trauma.  *Hinman*, 2020 WL 6375199 at *12.

The record supports the state court's holding.  *See United States v. Betro*, 115 F.4th

429, 448 (6th Cir. 2024) ("[P]rosecutors must be given leeway to argue reasonable

inferences from the evidence.") (quotation omitted).  Relief is denied on this claim.

### 5.

Lastly, Petitioner argues that the following portion of the prosecutor's

opening statement was argumentative and excessively inflammatory.

> When my youngest son who is 12 was probably about five or six, he
> went through a phase where he was incredibly scared of monsters.
> They were everywhere.  They were in his closet.  They were under his
> bed and every single day we had to go through a ritual of getting out a
> blue flashlight.  I don't know how we put it together, but we got a
> blue flashlight, and we need a vanilla spray, and we need all of these

24

things to check in all of those places to make sure that he was safe to go to bed, and if we didn't do it, if we skipped a step, he would toddle out and tell us that we hadn't done the master spray, or we hadn't shown the blue light and we had to start over.

As a parent, you do everything in your power to keep your kids safe, even these things like this that are like blue flashlights and monster spray, and what do you do as a parent when the threat isn't just a monster—

[Defense Counsel]: Judge, I object. This is argument.

[The Prosecutor]: Your Honor, I have one sentence before I will continue.

THE COURT: I'll overrule the objection.

[The Prosecutor]: Thank you, Your Honor.  What do you do as a parent when the threat is real? And that's what this case is about.  This case is about a real threat in a real set of households and the common thread in those households is that Uncle Ron has access to children.

*Hinman*, 2020 WL 6375199, at *12-13.

The Michigan Court of Appeals denied this claim because the prosecutor's "remarks were not calculated to inflame the jury's passions or to cause the jury to be unfairly biased against defendant." *Id.* at *13.  Instead, the remarks were intended to explain the prosecutor's theory of the case. *Id.*  Moreover, the state court held that even if the remarks were improper, they did not deprive Petitioner of a fair trial. *Id.*

The state court's decision is a reasonable application of *Darden*.  The prosecutor devoted much of her opening statement to outlining the evidence she

expected the jury to hear.  She did not inflame the passions of the jury, nor did she

misstate or overstate the evidence ultimately presented.  The isolated comments

did not render Petitioner's trial fundamentally unfair.  Habeas relief is denied on

this claim.

## C.  Cumulative Effect of Alleged Errors

Petitioner claims that the cumulative effect of multiple errors asserted in the

habeas petition denied him a fair trial.  This claim does not provide a basis for

relief because the Sixth Circuit has held that such claims are not cognizable in

federal habeas corpus proceedings.  *Cartwright v. Phillips*, No. 23-5747, 2024 WL

669308, at *5 (6th Cir. Jan. 26, 2024) (citing *Hill v. Mitchell*, 842 F.3d 910, 948

(6th Cir. 2016)).

## D.  Sentencing Claim

In his eighth claim, Petitioner argues that the trial court erred by ordering his

two first-degree CSC sentences to be served concurrently with each other but

consecutively to his two third-degree CSC sentences.  The Michigan Court of

Appeals granted Petitioner relief on this claim and remanded to the trial court for

modification of the judgment of sentence.  *See Hinman*, 2020 WL 6375199 at *8.

Therefore, the claim is moot.

To the extent that Petitioner argues that his corrected sentence is improper

because it orders his two first-degree CSC sentences to be served consecutively to

one another, this claim is meritless.  The question of whether a petitioner was properly sentenced to consecutive terms of imprisonment is a question of state law not cognizable on habeas corpus review.  *See Oregon v. Ice*, 555 U.S. 160, 165 (2009) (holding that imposition of consecutive sentences is constitutionally permissible); *Beverly v. Burt*, No. 19-1464, 2019 WL 11753785, at *3 (6th Cir. July 23, 2019) (finding challenge to consecutive nature of sentences not cognizable on federal habeas review).

In his reply brief, Petitioner reframes his sentencing claim by asserting that imposition of consecutive sentences violates the Eighth Amendment's ban on cruel and unusual punishment.  This claim is not properly before the Court.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (explaining that arguments first presented in a reply are "not properly before the district court" and "the district court d[oes] not err in declining to address" them).

Even assuming the claim is properly before the Court, it is meritless.  "[T]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).  "'[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment.'"  *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*,

27

209 F.3d 577, 583 (6th Cir. 2000)).  If a sentence remains within the statutory

limits, trial courts have historically been given wide discretion in determining "the

type and extent of punishment for convicted defendants." *Williams v. New York*,

337 U.S. 241, 245 (1949).  *See also Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir.

2000) ("A sentence within the statutory maximum . . .  generally does not

constitute cruel and unusual punishment.") (internal quotation omitted).

Petitioner's sentence is not grossly disproportionate or excessive.  His

sentences did not exceed the statutory maximum for any of his crimes because, as a

fourth habitual offender, he faced a sentence of up to life imprisonment.  *See* Mich.

Comp. Laws §§ 769.12, 750.520b(1)(a), 750.520d(1)(a).  The trial court acted

within its discretion and the Court finds no extreme disparity between the crime

and sentence that would implicate Eighth Amendment concerns.

### E.  Ineffective Assistance of Counsel Claims

Finally, Petitioner advances multiple ineffective assistance of counsel

claims.  He maintains counsel was ineffective for failing to: (1) object to Amy

Mawhorter's testimony regarding what AJ and AJ's mother told her, (2) object to

the prosecutor's questions during voir dire, and (3) object to the prosecutor's

misstatement of facts during closing argument.

On habeas corpus review, to prevail on an ineffective assistance of counsel

claim, Petitioner must show that the state court's denial of his claim was contrary

to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668

(1984). *Strickland* established a two-prong test for claims of ineffective assistance

of counsel: a habeas petitioner must show (1) that counsel's performance was

deficient, and (2) that the deficient performance prejudiced the defense. *See id.* at

687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"

*White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569

U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim

under *Strickland*, the standard is "all the more difficult" because "[t]he standards

created by *Strickland* and § 2254(d) are both highly deferential and when the two

apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal

citations and quotation marks omitted). "[T]he question is not whether counsel's

actions were reasonable"; but whether "there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard." *Id.*

This Court must "indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689

(quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The Michigan Court of Appeals denied Petitioner's ineffective assistance of counsel claims because any objections would have been meritless.  The court of appeals further held that, to the extent that the prosecutor erred in referencing AJ's forensic interview in her closing argument, Petitioner was not prejudiced by defense counsel's failure to object.  As already discussed, Petitioner fails to show errors or improprieties warranting objections by defense counsel.  Counsel therefore was not ineffective for failing to raise meritless objections.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## V.  Conclusion

For the reasons stated, the Court **DENIES** the petition for a writ of habeas corpus and **DENIES** a certificate of appealability.

The Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

**SO ORDERED**.


Date: February 26, 2025                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge